IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK D. MARSHALL,

                                         OPINION and ORDER

               Plaintiff,

                                         07-cv-173-bbc

      v.

JEFFREY GARBELMAN, GARY ANKARLO,
DONALD STRAHOTA, DEBRA FISCHER,
EUGENE BRAAKSMA, MICHAEL MEISNER,
MICHAEL THURMER, LT. BREAMER,
LT. GREFF, and SGT. BEASLEY,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary relief brought under 42 U.S.C. § 1983.  Plaintiff Mark Marshall, a former Wisconsin state inmate, contends that defendants Jeffrey Garbelman, Gary Ankarlo, Donald Strahota, Debra Fischer, Eugene Braaksma, Michael Meisner, Michael Thurmer, Lt. Breamer, Lt. Greff and Sgt. Beasley violated his Eighth Amendment rights by deliberately disregarding his need for mental health treatment when they refused to refer plaintiff to a psychiatrist or seek help for him when he was at risk of self-harm.

This case has had several permutations.  Plaintiff filed his initial complaint in March

1

2007 setting forth a laundry list of difficulties plaintiff allegedly had suffered and was suffering at Waupun Correctional Institution.  (At the time plaintiff filled this complaint, he was still housed at Waupun.)  Although I granted plaintiff leave to proceed on several of his claims, in November 2007, the Court of Appeals for the Seventh Circuit decided in George v. Smith, 507 F.3d 605 (7th Cir. 2007), that district courts must dismiss or sever cases in which parties and claims have been improperly joined under Fed. R. Civ. P. 18 and 20.  Therefore, on November 26, 2007, I severed plaintiff's original complaint into five separate lawsuits and offered him an opportunity to choose those he wanted to prosecute. Dkt. #26.  Plaintiff voluntarily dismissed four of the lawsuits and chose to proceed on the Eighth Amendment claim.  Dkt. #29.  When it appeared that plaintiff could not litigate pro se, I appointed counsel to assist him in undertaking discovery and preparing the materials necessary to properly prove his claims.  Dkt #33.  Subsequently, plaintiff filed an amended complaint, adding new defendants.

Now before the court is defendants' motion for summary judgment asserting three grounds for entry of judgment: (1) plaintiff does not suffer from a serious mental illness; (2) if plaintiff does suffer from a serious mental illness, he has produced no evidence to show that defendants were deliberately indifferent to his serious mental health care needs; and (3) defendants are entitled to qualified immunity because no constitutional violation occurred or, in the alternative, no violation was clearly established at the time.  Defendants' motion

2

will be granted in part.

Although a dispute exists whether plaintiff suffers from a serious medical illness, the undisputed facts show that plaintiff engaged in repeated acts of self-harm and was diagnosed by the defendant doctors as having two different mental disorders while housed at Waupun. It is not necessary to decide whether his condition was a serious medical illness; assuming that it was, the undisputed facts reveal that plaintiff received mental health treatment for these disorders and that defendants Garbelman, Ankarlo, Braaksma and Fischer attended to plaintiff's repeated acts of self-harm by placing him in observation, monitoring his status and placing him in restraints to insure his safety. Although the treatment may not have been optimal, plaintiff has not adduced enough evidence to allow a jury to find that the treatment or lack of treatment was constitutionally inadequate. Therefore, summary judgment for defendants Garbelman, Ankarlo, Braaksma and Fischer will be granted.

The parties dispute whether defendant Beasley disregarded plaintiff's threats of self-harm and demand for a clinician on September 2, 2007. However, plaintiff has not adduced enough evidence to allow a jury to find that defendant Beasley's actions or omissions caused him to suffer harm of any significance. Therefore, summary judgment for defendant Beasley will be granted. Also, because plaintiff has failed to introduce any evidence that defendants Strahota, Meisner, Thurmer, Breamer and Greff had any personal involvement in the alleged violations, summary judgment will be granted for these defendants.

From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

### A. Parties

1. Plaintiff

Plaintiff Mark Marshall was an inmate housed at the Waupun Correctional Institution from October 12, 2006 until June 14, 2007 and from August 8, 2007 until August 28, 2008. Plaintiff began taking medication for mental illness at age 9 and was first hospitalized for his mental disorders at age 10. By the time he was 28, he had been hospitalized more than 30 times. Plaintiff is no longer incarcerated and is seeking help for his mental health.

2. Defendants

At all times relevant to this case, defendants Dr. Jeffrey Garbelman, Dr. Gary Ankarlo, Dr. Debra Fischer and Dr. Eugene Braaksma were employed by the Wisconsin Department of Corrections in the Psychologist Service Unit at Waupun Correctional Institution. Defendant Garbelman was a psychological associate. Defendant Ankarlo was a psychological supervisor. Defendant Fischer was a psychological associate from September 6, 2006 to

4

October 13, 2007.  Defendant Braaksma was a psychological consultant.

At all times relevant to this case, defendants Kelly Beasley, Michael Thurmer, Michael Meisner, Donald Strahota, Daniel Breamer and Brain Greff were employed by the Wisconsin Department of Corrections at Waupun Correctional Institution.  Defendant Sgt. Beasley was a correctional sergeant.  Defendant Thurmer was Deputy Warden and Warden.  Defendant Meisner was Deputy Warden.  Defendant Strahota was Security Director.  Defendants Lt. Breamer and Lt. Greff were supervising officers.


## B. Plaintiff's Mental Health History

In June 1996, plaintiff was diagnosed with schizoaffective disorder upon admission to the Mendota Mental Health Institution.  The final diagnosis from that hospitalization was "conduct disorder."

On February 22, 2002, Dr. Narinder Saini reported that plaintiff had an Axis 1 diagnosis of schizoaffective disorder and an Axis II diagnosis of antisocial personality disorder.  Axis 1 conditions include schizophrenia, delusional disorder, schizoaffective disorder and major depressive disorders.  Axis II conditions include a primary personality disorder that is severe, accompanied by significant functional impairment and subject to periodic decompensation.  Examples include psychosis, depression, or suicidality.

5

## C. Plaintiff's Treatment at Waupun

Plaintiff was transferred from Columbia Correctional Institution to Waupun Correctional Institution on October 12, 2006.  From then until May 2007, defendant Garbelman was assigned as plaintiff's psychological associate.  On October 16, 2006, defendant Garbelman reviewed plaintiff's intake file, which classified plaintiff as mental health code MH-2.  Although the MH-2 classification has two components, 2A and 2B, plaintiff's file did not indicate which code applied to plaintiff.  According to the mental health classification codes used by the Department of Corrections, inmates classified as MH-2A have serious mental illnesses based on Axis 1 conditions and inmates classified as MH-2B have serious mental illnesses based on Axis 2 conditions.  Inmates classified as MH-2 are seen more frequently and have more severe mental health issues than other inmates.  After reviewing the file, Garbelman did not refer plaintiff to psychiatry.

On October 16, 2006, when plaintiff threatened to tie a sheet around his neck and cut himself with a paint chip, he was placed in observation status.  Defendant Fischer interviewed plaintiff and found his mood and affect to be within normal limits.  Fischer reviewed plaintiff's placement in observation status and determined that plaintiff should remain there.  Later that day, when plaintiff continued his threats of self-harm, he was placed in restraints.  On the following day, defendant Garbelman saw plaintiff on two different occasions; both times, plaintiff denied any suicidal thoughts.  After conducting a

review of plaintiff's placement in observation and consulting with defendant Ankarlo and the segregation unit sergeant, Garbelman determined that plaintiff should remain in the segregation unit and continue to be monitored to insure his physical safety and prevent him from harming himself.

On October 26, 2006, plaintiff was placed in observation because of threats of self-harm. Plaintiff told defendant Garbelman that while he was on observation he had tied a sheet around his neck and also scratched his neck with a paint chip.

On November 27, 2006, plaintiff told Garbelman that he was having "bizarre hallucinations" and was at risk of self-harm. Plaintiff was placed on observation, where his status was monitored by defendants Ankarlo, Fischer and Garbelman. Because plaintiff was coherent and interacted with defendants in a polite manner, Ankarlo authorized plaintiff's release from observation on December 1, 2006.

On December 14, 2006, plaintiff was tearing up bed sheets in his cell. Defendant Fischer interviewed plaintiff to assess his level of self-harm and need for placement in observation. Plaintiff denied any suicidal intent and defendant Fischer determined that plaintiff could return to his cell.

On December 15, 2006, after a security officer observed him swallow part of a paper clip, plaintiff was placed on observation status to insure his safety. Defendant Strahota, the security director at Waupun, ordered removal of all the water in plaintiff's toilet so that staff

7

could inspect plaintiff's excrement to recover any contraband such as paper clips.

Defendant Ankarlo referred plaintiff to the Wisconsin Resource Center, but plaintiff was denied admission on December 20, 2006 because there was insufficient time to complete a program.

On December 26, 2006, defendant Garbelman authorized putting plaintiff in observation because he threatened self-harm.

On January 4, 2007, plaintiff threatened to cut or hang himself or commit some other form of self-harm. Security staff informed defendant Fischer of plaintiff's actions. Fischer ordered that plaintiff be put on observation. When plaintiff's threats of self-harm continued, it was determined that plaintiff should be placed in restraints. Later, defendant Fischer interviewed plaintiff to evaluate whether he posed an immediate threat to himself. Both she and defendant Garbelman determined that plaintiff should remain on observation.

On January 7, 2007 and February 5, 2007, plaintiff was placed in observation status because of threats of self-harm. On both occasions, a chemical incapacitating agent was used on plaintiff in order to remove him from his cell and clinicians were notified. On both occasions, defendant Beasley wrote an incident report.

On February 8, February 15, and March 12, 2007, plaintiff threatened to harm himself. Defendants placed plaintiff in observation and restraints. On March 12, 2007, defendant Ankarlo visited plaintiff to assess his status. Because plaintiff's thoughts were

8

coherent and goal-oriented, defendant Ankarlo authorized plaintiff's release from observation the following day.

On March 29, 2007, plaintiff threatened to cut himself. Defendant Beasley and the supervising officer inspected plaintiff's status and informed a clinician about plaintiff's situation, but plaintiff was not placed on observation status.

In May 2007, defendant Braaksma became plaintiff's primary psychological associate. When Braaksma began interviewing plaintiff, he knew of plaintiff's history and threats of self-harm. However, he did not believe these threats were genuine. In defendant Braaksma's analysis, plaintiff was a functional "SMI," which meant that plaintiff was not diagnosed with a serious mental illness but required a significant amount of intervention and contact to keep him as stable as possible.

On July 26, 2007, plaintiff saw Dr. Kenneth Burg at the Dodge Correctional Institution. Dr. Burg wrote in his psychiatric report: "criteria supportive of bipolar considerations, diagnosis of schizoaffective should also be considered."

Upon plaintiff's return to Waupun from Dodge, defendant Braaksma reviewed plaintiff's psychological services file, noted that plaintiff was at moderate risk of suicide, and added a diagnosis of "fetishism" to plaintiff's file based upon his previous work with plaintiff. Braaksma did not check the psychiatry follow-up box but did check the "active psychiatric treatment" and "active psychological treatment" boxes on the clinical contact

9

sheet.

Defendant Braaksma is required to monitor an inmate's mental health to determine whether he is adjusting and whether there is deterioration in his mental health. He is to encourage ongoing counseling or make referrals to psychiatry if he believes medication is needed and the inmate wants to explore that option. Defendant Braaksma would refer an inmate to a psychiatrist where he saw signs of the need for further clinical services. If the inmate refused, Braaksma would attempt to convince the inmate to participate. However, Braaksma would not make a referral to a psychiatrist if the inmate refused to be seen by one. Braaksma did not observe plaintiff's self-harm behavior worsening during his personal interactions and clinical contacts with plaintiff.

Defendant Braaksma began treating plaintiff's fetishism by providing plaintiff with written information regarding the disorder and exploring the sexual abuse plaintiff suffered as a young child to ascertain the arousal pattern for plaintiff's fetishism. Braaksma also addressed plaintiff's Axis II issues by focusing on steady, consistent contact and problem solving. He avoided dealing with contentious issues such as plaintiff's relationship with the Department of Corrections, staff and peers, and attempted to work with plaintiff on issues that would assist him in not returning to custody upon release. Braaksma offered plaintiff the opportunity to participate in a segregation process group focused on group treatment issues for inmates with Axis II personality disorders, but plaintiff refused to participate.

10

Braaksma had no occasion to discuss plaintiff with psychiatrists at Waupun during weekly meetings because those meeting focused on inmates on medication. Plaintiff was not on medication and did not want to be on any. However, he had access to psychiatry on a monthly basis while he was at Waupun.

On August 13, 2007, plaintiff was placed on observation by Dr. Grisdale because he reported thoughts of self-harm. He was released the following day.

On September 2, 2007, plaintiff began having thoughts of hurting himself and started yelling and kicking his cell door. Defendant Beasley went to plaintiff's cell in response, but she did not remove plaintiff from his cell or take him to observation. Later, plaintiff started to cut himself and smeared blood on his window. Two inmates heard plaintiff's screams. After some time, another correctional officer came and took him out of his cell. Plaintiff was returned to his cell later that day. (The parties dispute whether plaintiff asked defendant Beasley to be placed on observation and whether she ignored this request. Plaintiff has offered no evidence of the extent of his injuries and there is no record regarding this incident.)

On September 13, 2007 and October 11, 2007, plaintiff refused to be seen by psychiatrist Dr. Ralph Froelich. Froelich noted in his report regarding the September 13, 2007 visit that plaintiff refused to take any psychiatric medications and showed "cognitive distortions with a suggestions [sic] of a diagnosis of Schizophrenia Paranoid Type." Froelich

11

wrote that he offered "to help [plaintiff] if he could" but plaintiff made no response.

On October 2, 2007, defendant Beasley observed a bed sheet formed as a noose and tied to a shower head in plaintiff's cell.  Beasley informed the supervising officer and plaintiff was moved to a strip search cell.  The psychologist service unit was contacted but a clinician determined not to place plaintiff in observation status.

On October 12, 2007, plaintiff threatened to harm himself by cutting his eye with a paint chip.  Someone in the psychologist service unit authorized restraints for plaintiff. Defendant Garbelman released plaintiff from observation on October 15, 2007.  After consulting with defendant Braaksma, Garbelman referred plaintiff to the Wisconsin Resource Center.  On November 5, 2007, the center rejected plaintiff's referral.

On November 18 and December 25, 2007, plaintiff was placed on observation because of risks of self-harm.

On January 21, 2008, plaintiff threatened to harm himself again.  Defendant Garbelman placed him on observation status to insure his physical safety and prevent any self-harm.  While plaintiff was on observation, security staff checked on his well-being every 15 minutes.  Plaintiff was released the following day.

On February 12, 2008, plaintiff attempted to cut himself with a staple and was placed in observation.  On February 15, 2008, defendant Braaksma saw him and released him from observation.  Braaksma later wrote an email, which he characterizes as "a bit of prison

humor," indicating that plaintiff had no desire to harm himself and therefore "[i]t was then necessary to apply Braaksonian Technique #6 which states: 'if unable to convince recent obs release inmates to go off on a weekend when Dr. Grisdale is on call, all efforts should be made to call on the inmate's inherent sense of fair play and promise them extra sudokos in order to garner a threat of self-harm, no matter how ridiculous it may be."

On April 8, 2008 and May 12, 2008, plaintiff was placed in observation because of his threats of self-harm.  Plaintiff was placed in observation again on May 31, 2008, after he used a staple to make a superficial wound to his neck.  He was released the following day.  On June 6, 2008, plaintiff began cutting his arm and displaying "paranoid themes" and was placed in observation.

## C. Non-Medical Defendants

### 1. Defendant Beasley

Defendant Beasley has received no formal training or education regarding mental health treatment and individual inmates' mental health needs.  In her official capacity, she does not provide mental health services but if she were to witness an inmate exhibiting behavior dangerous to himself or another, she would immediately contact staff who are authorized to place the inmate in observation.  Defendant Beasley was aware that plaintiff had harmed himself on January 7, February 5 and March 12, 2007.  On March 12, 2007,

Beasley escorted plaintiff to observation status.

### 2. Defendant Security Director Strahota

Defendant Strahota was aware of plaintiffs attempts at self-harm from his knowledge of plaintiff's activities and behavior during plaintiff's prior incarcerations at Waupun. Defendant Strahota does not have personal knowledge of plaintiff's medical needs and does not provide health services to inmates. On December 15, 2007, defendant approved an incident report detailing the removal of water from plaintiff's cell.

### 3. Defendants Thurmer, Meisner, Greff and Breamer

Defendants Greff, Meisner, Thurmer and Breamer do not provide mental heath treatment to plaintiff and have no formal training in treating an individual's mental health needs. They were not personally involved in making determinations related to placing plaintiff in observation or segregation or to the use of restraints or chemical agents.

### OPINION

#### A.  Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex

14

Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).  However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor.  Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

## B. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  Thus, the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." Snipes v. DeTella, 95 F. 3d 586, 590 (7th Cir. 1996) (citing Estelle, 429 U.S. at 103). Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 104-05.

Defendants argue that they were not deliberately indifferent to plaintiff's mental

15

health needs and that plaintiff received adequate mental health care while he was incarcerated at the Waupun Correctional Institution during the time period on which plaintiff focuses.  Alternatively, defendants argue that they are immune from suit for any monetary damages under the doctrine of qualified immunity because their actions did not amount to a violation of plaintiff's constitutional rights and even if they did, any constitutional violation was not clearly established at the time of defendant's actions.

To defeat defendants' motion for summary judgment, plaintiff must adduce evidence from which a reasonable jury could infer that he had a serious mental health need (objective component) and that defendants were deliberately indifferent to this need (subjective component).  Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).  As an initial matter, plaintiff appears to have abandoned his claim that defendants Strahota, Meisner, Thurmer, Breamer and Greff were deliberately indifferent to his need for mental health treatment or did not seek to help plaintiff when he was at risk of self-harm.  In responding to defendants' proposed findings of fact, plaintiff does not dispute defendants' proposed findings that Meisner, Thurmer, Breamer and Greff had no personal involvement in the determinations whether to place plaintiff in observation or segregation and that none of these defendants are required to provide mental health treatment for individuals with mental health needs.  Defendant Strahota did approve the removal of water from plaintiff's cell, but this was done in order to determine whether plaintiff had ingested contraband.  Plaintiff

16

does not deny that Strahota is neither trained nor required to provide mental health treatment to inmates.  Therefore, summary judgment will be granted as to these defendants.

1. Serious mental health need

"Serious medical needs" encompass conditions that are life-threatening or that carry risks of permanent serious impairment if left untreated as well as those that result in needless pain and suffering when treatment is withheld.  Gutierrez, 111 F.3d at 1371-73.  Mental illness can qualify as a serious medical need.  Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001); see also Wellman v. Faulkner, 715 F.2d 269, 272 (7th Cir. 1983)("Treatment of the mental disorders of mentally disturbed inmates is a 'serious medical need.'").

Defendants deny that plaintiff has a serious mental illness but they do not deny that he has been previously diagnosed with schizoaffective disorder and anti-social borderline personality disorder.  The parties do not dispute that at all times relevant to this suit plaintiff has been classified as MH-2, a classification used for inmates with serious mental illnesses.  Both defendants Garbelman and Braaksma acknowledged in their clinical sheets that plaintiff had been previously diagnosed with anti-social borderline personality disorder and neither defendant actively disagreed with this diagnosis.  Also, defendant Braaksma diagnosed and began treating plaintiff for fetishism.  The parties agree that plaintiff has

17

engaged in numerous incidents of self-harm that have required cell extractions, restraints, and placement in observation status to insure plaintiff's safety.  They dispute the cause of plaintiff's recurring efforts to harm himself.   Although plaintiff has offered no expert testimony regarding his mental condition, the record shows that plaintiff has a history of mental disorders of varying severity and numerous instances of self-harm and suicidal tendencies.  Thus, there is sufficient evidence from which a jury could infer that plaintiff suffered from a serious mental illness.

2. Deliberate indifference

To show deliberate indifference, a plaintiff must establish that the defendants were "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health.  Wynn v. Southward, 251 F.3d 588 (7th Cir. 2001).   When a plaintiff receives some form of medical care, he can show deliberate indifference only if he can prove that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition.  Snipes, 95 F. 3d at 592.  Mere disagreement with a doctor's medical judgment, inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference.  Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007); Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515 (7th

18

Cir. 2002).

a. Defendants Garbelman, Ankarlo, Braaksma and Fischer

Plaintiff argues that the failure of defendants Garbelman, Ankarlo, Braaksma and Fischer to refer him to a psychiatrist or seek help for him when he engaged in acts of self-harm constituted deliberate indifference to his serious mental health care needs.  Plaintiff's argument fails at the outset.

The undisputed facts reveal that, while plaintiff was at Waupun, he was continuously under the supervision of a psychologist, was offered a number of different opportunities to engage in psychological treatment and was visited by a psychiatrist on a monthly basis. Plaintiff had two psychological associates assigned to him at all times.  Defendants Garbelman, Braaksma, Ankarlo and Fischer visited plaintiff on numerous occasions to evaluate whether he should be placed or remain on observation.  Plaintiff was placed on observation for threats of self-harm on 18 separate occasions.  On only three occasions on which he threatened self-harm was he not placed on observation status and he has made no showing that he harmed himself on those occasions or that the failure to put him in observation made his mental condition worse.

Defendants Garbelman and Ankarlo made an effort to refer plaintiff to the Wisconsin Resource Center for treatment on two different occasions, once in December 2006 and once

19

in October 2007, but those requests were turned down by the center.  Defendant Braaksma offered plaintiff the opportunity to participate in a treatment program, but plaintiff refused the offer.  A psychiatrist visited plaintiff on a monthly basis.

Although plaintiff argues that defendants should have referred him to a psychiatrist for his mental illness, plaintiff has not offered any medical evidence either that psychiatric treatment was essential to his mental health or that failing to refer him to a psychiatrist was so blatantly inappropriate that it was likely to aggravate his mental condition.  Snipes, 95 F.3d at 592.  Given plaintiff's refusal to speak to the psychiatrist who visited him monthly, it is unlikely that a referral would have been productive.

Plaintiff's failure to offer expert testimony regarding his need for treatment would not be fatal to his claim if the need for psychiatric treatment were "so obvious that even a lay person would perceive the need."  Edwards, 478 F.3d at 830-31.  Plaintiff has made no such showing.  The record shows that plaintiff was visited by a psychiatrist on a monthly basis, that he made no request for psychiatric treatment or psychiatric medication and that neither of the psychiatric reports indicates a clear need for psychiatric treatment.

Plaintiff has failed to show that defendants refused to seek help for him when he was at risk of self-harm.  He cannot argue that defendants took no action to address his threats of self-harm when the record shows that plaintiff was placed in observation on 18 different occasions and put in restraints at times to insure his safety.  Although one has to wonder

20

whether placing plaintiff in observation whenever he threatened self-harm helped reduce the recurrence of these threats, plaintiff has offered no evidence suggesting that his placement on observation status exacerbated his mental illness, increased his risk of self-harm or was otherwise blatantly inappropriate.

Plaintiff's effort to show that defendants were deliberately indifferent to his mental disorder comes down to his statement that he engaged in repeated acts of self-harm because of his serious medical illness. He proposes no facts to support that connection except those in his own affidavit. Even if plaintiff's conclusory statement were sufficient to allow a jury to infer the cause of his acts, he would still have to show that defendants were deliberately indifferent to his illness. As I have explained, he cannot make that showing. He has proffered no expert testimony and the facts do not allow an inference to be drawn that the treatment he received from defendants Garbelman, Ankarlo, Braaksma and Fischer was so clearly inappropriate that it would be obvious to a lay person. Thus, the motion of these defendants for summary judgment will be granted.

b. Defendant Beasley

Plaintiff's only claim against defendant Beasley is based on her failure to contact a clinician when plaintiff requested to be placed on observation on September 2, 2007. It is undisputed that defendant Beasley knew of plaintiff's history of self-harm because she was

21

aware of his placement on observation status on January 7, 2007, February 5, 2007 and

March 12, 2007.  Therefore, she knew generally that plaintiff had a serious mental health

need.  However, it is disputed whether on September 2, 2007, defendant knew that plaintiff

wanted to be placed on observation, that he was afraid he would do himself harm or that he

had cut himself and smeared blood on the cell.  The parties do not dispute that another

officer removed plaintiff from his cell after he had cut himself and that later that day he was

returned to his cell.

To show deliberate indifference, plaintiff must be able to prove that defendant

Beasley's action were so inappropriate that they were "likely to seriously aggravate" his

serious mental condition.  Snipes, 95 F. 3d at 592.  Although a jury could find from the

undisputed facts that defendant Beasley failed to contact a clinician on September 2, 2007,

it could not find that her failure caused plaintiff serious harm.  Plaintiff proposed no fact to

the effect that he caused himself significant harm on September 2.  Williams v. Liefer, 491

F.3d 710, 714-16 (7th Cir. 2007)("[A] plaintiff must offer medical evidence that tends to

confirm or corroborate a claim that the delay [in treatment] was detrimental" to his health.).

The undisputed facts establish that when plaintiff was removed from his cell later in the day,

he was not placed on observation status but returned to his cell.  This suggests that any

injuries plaintiff incurred were insignificant and that he was not at serious risk for self-harm.

Plaintiff has failed to show that defendant Beasley's action or inaction made his mental

22

illness worse or caused him significant physical harm.

Because plaintiff has failed to adduce evidence from which a jury could find that on September 2, 2007 defendant's acts or omission seriously aggravated his mental health condition, defendant Beasley's motion for summary judgment will be granted.


ORDER

IT IS ORDERED that the motions for summary judgment of defendants Jeffrey Garbelman, Gary Ankarlo, Donald Strahota, Debra Fischer, Eugene Braaksma, Michael Meisner, Michael Thurmer, Lt. Breamer, Lt. Greff and Sgt. Beasley is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 13th day of November, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

23